UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICKA M. THOMAS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:16-CV-262

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision that she was no longer entitled to supplemental security income (SSI).

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

The ALJ summarized the procedural history of this case as follows:

In an initial determination from October 2005, the claimant was found disabled as of October 1, 1995 pertaining to her claims for supplemental security income and childhood disability insurance (on the record of CM Thomas). The claimant's disability was subsequently determined to have continued in a determination dated November 29, 2005 (Exhibit 3F).

The Social Security Administration completed a second continuing disability review and, on July 24, 2012, it determined that the claimant was no longer disabled as of July 1, 2012. This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer. Thereafter, the

        claimant filed [a] timely written request for a hearing before an Administrative Law Judge.

(PageID.36.) From there, Plaintiff appeared with her counsel before ALJ James Prothro for an administrative hearing on June 26, 2014. (PageID.48–96.) On September 12, 2014, the ALJ issued his decision finding that Plaintiff was no longer disabled. (PageID.33–47.) On January 11, 2016, the Appeals Council denied review, making it the Commissioner's final decision. (PageID.28–31.) This action followed.

## ALJ'S DECISION

        ALJs employ an eight-step sequential analysis in Title II claims and seven steps in Title XVI claims when assessing a continuation of benefits case. *See* 20 C.F.R. §§ 404.1594(f). Steps two through eight in Title II claims mirror steps one through seven in Title XVI. *See* 20 C.F.R. §§ 404.1594(f), 416.994(b). Title II, unlike Title XVI, has one addition step to begin the analysis: namely whether the individual is engaging in substantial gainful activity. If the answer was yes, the individual's disability has ended. If no, the analysis continues through the following steps.

        Step two of Title II (step one of Title XVI) is an examination of whether the individual had an impairment or combination of impairments which meets or equals the severity of a listed impairment. If the answer was yes, disability continues. Step three (step two of Title XVI) is an inquiry as to whether there had been medical improvement. Step four (step three of Title XVI) is an examination whether the medical improvement is related to the individual's ability to perform work. Step five (step four of Title XVI) is an analysis conducted if there has been no medical improvement or the medical improvement is not related to the individual's ability to perform work. Step six (step five of Title XVI) is a determination whether the individual's current impairments are

severe. If there is no severe impairment, the individual is not disabled. Step seven (step six of Title XVI) is an assessment of the claimant's "ability to do substantial gainful activity" in accordance with 20 C.F.R. §§ 404.1560, 416.960. That is, the ALJ determines the individual's residual functional capacity (RFC) based on all her current impairments and considers whether she can perform past relevant work. If she can perform such work, she is not disabled. Finally step eight (step seven of Title XVI) is an administrative finding whether the individual can perform other work in light of her age, education, work experience and RFC. If she is capable of performing other work, she is not disabled. 20 C.F.R. §§ 404.1594(f), 416.994(b); *see also Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307–08 (3d Cir. 2012); *Delph v. Astrue*, 538 F.3d 940, 945–46 (8th Cir. 2008).

    The ALJ began his discussion by finding that the administrative decision dated November 29, 2005, was the most recent favorable decision that Plaintiff was disabled. It was "the 'comparison point decision' or CPD." (PageID.38.) At the time of the CPD, Plaintiff had the medically determinable impairment of asthma that was severe enough to meet the requirements of Section 3.03B of the Listing of Impairments ("Listings"). (PageID.38.) Continuing with the analysis, the ALJ found that Plaintiff had never engaged in substantial gainful activity, including the period since July 1, 2012, the date her disability ended. (PageID.38.) The ALJ next found that the medical evidence established that as of July 1, 2012, Plaintiff had the medically determinable impairments of: (1) asthma; (2) migraine headaches (cervicalgia); (3) status-post left shoulder SLAP lesion surgery [January 2014] with left-sided neck pain; (4) degenerative disc disease with low back pain; (5) depression; (6) anxiety; and (7) opioid dependence [Vicodin, Dilaudid]. (PageID.39.) The ALJ determined these were Plaintiff's severe impairments. (PageID.39.) Next, the ALJ found that since July 1, 2012, these impairments did not meet or medically equal the severity of any listed

impairment, including Listings 1.02, 1.04, 1.08, 3.02, 3.03, 12.04, and 12.06. (PageID.39.) The ALJ continued by finding that medical improvement occurred as of July 1, 2012, and that this improvement was related to work because as of that date, Plaintiff no longer met or medically equaled the Listing that was met at the time of the CPD. (PageID.39.) The ALJ next determined that Plaintiff continued to have the above severe impairments on and after July 1, 2012. (PageID.40.) At the next step, the ALJ found that as of her medical improvement date, Plaintiff retained the RFC based on all the impairments:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) of the Regulations. She must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. With the left upper (non-dominant) extremity, the claimant can frequently push, pull, and reach overhead. Claimant is limited to performing simple work with only occasional public contact and performing no fast-paced work.

(PageID.40.) With that in mind, the ALJ determined that Plaintiff had no past relevant work, but that beginning on her medical improvement date, Plaintiff was able to perform a significant number of jobs. (PageID.45–46.) The ALJ relied on the testimony of a vocational expert in doing so. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform the following work: office helper (5,200 Michigan jobs and 67,000 national jobs), mail sorter (2,800 Michigan jobs and 35,000 national jobs) and inspector (2,000 Michigan jobs and 18,000 national jobs). (PageID.89–90.) Based on this record, the ALJ found that since July 1, 2012, Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.46.)

Accordingly, the ALJ entered a decision finding that Plaintiff's disability ended on July 1, 2012, and concluding that she remained not disabled through the date of the decision. (PageID.46–47.)

## DISCUSSION

**1.     Substantial Evidence Supports the ALJ's Medical Improvement Determination.**

Plaintiff first challenges the ALJ's determination that she experienced medical improvement beginning July 1, 2012. "Medical improvement" is defined in relevant part as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1). Plaintiff contends the ALJ's determination is faulty because he chose "a date for the cessation of this Plaintiff's benefits which does not coincide with any particular medical record." (PageID.1201.) Plaintiff cites to *Mueller v. Comm'r of Soc. Sec.*, No. 1:09-CV-695, 2010 WL 3475494, at *5 (W.D. Mich. Aug. 10, 2010), *report and recommendation adopted*, No. 1:09-CV-695, 2010 WL 3475436 (W.D. Mich. Sept. 2, 2010) in support of her argument that the ALJ picked an arbitrary date to terminate benefits. In *Mueller*, the Magistrate Judge held that the ALJ's finding of medical improvement on a specific date "appears to be an arbitrary date . . . not related to any particular occurrence or examination." *Id.* As the Sixth Circuit has stated, and this Court has recognized, however, no "smoking gun medical documents" from a specific date are required to uphold an ALJ's decision that medical improvement has occurred. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009). Rather, "the ALJ's

determination as to the date on which a claimant's disability ended must simply be 'not so wholly arbitrary so as to carry the ALJ's decision outside the zone of choice that the ALJ possesses in rendering disability decisions.'" *Bronsink ex rel. Lovely v. Comm'r of Soc. Sec.*, No. 1:10–cv–458, 2011 WL 4579603, at *14 (W.D. Mich. Sept. 15, 2011) (quoting *White*, 572 F.3d at 285).

There is no presumption of continuing disability. *See Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 n.1 (6th Cir. 1994)). Nevertheless, the burden of proof to establish that a claimant has experienced a medical improvement which renders her capable of performing substantial gainful activity lies with the Commissioner. *See id.* at 764–65; *Couch v. Comm'r of Soc. Sec.*, 2012 WL 394878, at *10 (S.D. Ohio, Feb. 7, 2012). In sum, an ALJ must "build an accurate and logical bridge between the evidence and the result." *York v. Massanari*, 155 F. Supp. 2d 973, 980 (N.D. Ill. 2001).

The ALJ built a sufficient bridge here. As the ALJ indicated, state agency physicians found that Plaintiff no longer met Listing 3.03B. (PageID.39.) Aside from incorrectly claiming that the ALJ could not rely on these opinions because they were not dated July 1, 2012, Plaintiff does not argue that ALJ could not rely on their opinions at this step. Indeed, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). If anything, these opinions support a determination that Plaintiff's disability ended at an earlier date. For example, on April 18, 2012, Dr. Glen Douglass indicated that Plaintiff had undergone medical improvement. (PageID.99.) In support, the doctor

depended upon a normal pulmonary function study dated April 13, 2011,[1] as well as several clear lung exams dated September 12, 2011, November 16, 2011, and January 5, 2012. (PageID.99.) Dr. Douglass gave a similar justification in determining that Plaintiff was capable of performing light work. (PageID.565–572.) Dr. Saadat Abbasi also relied on these records in rendering his September 2012 opinion. (PageID.696–697.) The ALJ gave both these opinions significant weight. (PageID.44.) Nevertheless, it appears the ALJ gave Plaintiff the benefit of the doubt and found a later improvement date of July 1, 2012, a date near Dr. Thomas Spahn's consultative examination which found that though Plaintiff had strong depression and high anxiety, she was reasonably friendly and had an appropriate affect to her mood. (PageID.576.) She had a GAF score of 60, indicating only "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.)".[2] A.M.. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 472–73 (4th ed., Text Revision 2000) (PageID.578.). Dr. William Schirado used this examination in arriving at his conclusions regarding Plaintiff's mental impairments. (PageID.597.) The ALJ gave significant weight to this opinion. (PageID.44.) In sum, substantial evidence supports the ALJ's medical improvement determination, and the ALJ's reliance on these medical opinions indicates that his decision was not "wholly arbitrary." *White*, 572 F.3d at 285. Accordingly, this claim of error is rejected.

---

[1] Contrary to Plaintiff's assertion, this study is in the record. (PageID.620).

[2] Plaintiff questions the relevance of this examination in finding medical improvement related to her asthma. As the examiner found, however, Plaintiff's anxiety aggravates her asthma. (PageID.577.)

### 2. Substantial Evidence Supports the ALJ's Determination that Plaintiff No Longer Met a Listed Impairment.

The Listing of Impairments, detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. In a claim similar to that raised above, Plaintiff asserts that she currently satisfies the requirements of Listing 3.03B. (PageID.1202–1203.) That Listing provides as follows:

> 3.03   *Asthma*. With:
>
> B.   Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App.1 § 3.03. Under Section 3.00C, "attacks" of asthma are defined as:

> [P]rolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

*Id.* at § 3.00C. The ALJ found that Plaintiff did not meet Listing 3.03 because "neither the pulmonary function tests nor the frequency of emergency department visits establish listing-level severity at any time since July 1, 2012, including the period from March 7, 2013 and March 24, 2014 when there were five emergency department visits (Exhibits 24F through 28F)." (PageID.39.)

Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Comm'r of Soc. Sec.*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)). Plaintiff argues she satisfies this listing by pointing to six treatment records dated July 30, 2013, October 14, 2013, December 24, 2013, January 5, 2014, January 20, 2014, and March 24, 2014.[3] (PageID.1203.) She claims that "the number of her visits for emergency treatment demonstrated that she continued to meet the requirements of the Listing." (PageID.1228.) But the frequency of attacks is only a part of the Listing's requirements. The attacks must also satisfy the severity requirement as found in Section 3.00C. Plaintiff's brief and reply brief are entirely silent on this point, and as laid out below, it does not appear these records support Plaintiff's case.

On July 30, 2013, Plaintiff visited urgent care complaining of shortness of breath and cough for the prior three days. (PageID.973.) On exam, she had normal pulmonary effort, but with wheezes. (PageID.973.) She was given oral medication and medication via a nebulizer and was discharged the same day in improved condition. (PageID.974.) On October 14, 2013, Plaintiff again visited urgent care, complaining of sore throat, cough, and congestion. (PageID.979.) She was given a chest x-ray, and treated with inhaled medication via a nebulizer. She was discharged the same day

---

[3] The Court notes that Plaintiff's brief does not properly reference the record as required by Administrative Order No. 16-MS-017, effective March 7, 2016, *available at* http://www.miwd.uscourts.gov/referencing-court-record-pageid-cite-form. Plaintiff's counsel is advised that future filings which fail to follow the Court's briefing requirements may be stricken. Moreover, it appears the dates provided by Plaintiff do not correspond to the records she references. As such, the Court will examine those records and dates referenced by the Commissioner. Importantly, Plaintiff's reply brief does not disagree that these dates and records are those she intended to reference. (PageID.1229) ("Defendant's Brief very well may be correct regarding some of its statements about the pagination and dates.").

in improved condition with prescribed medications, including an antibiotic. (PageID.979.) On December 24, 2013, Plaintiff visited Mercy Health Urgent Care complaining of nausea, asthma, sinus pressure, and migraines. (PageID.1106–1107.) On exam she was found to be breathing without difficulty, though there was audible wheezing noted. (PageID.1109, 1128.) She was given medication through a nebulizer as well as fluids through an IV. (PageID.1128.) She was discharged the same day with a prescription for an antibiotic. (PageID.1128.) On January 5, 2014, Plaintiff again visited Mercy Health Urgent Care. She complained of cough, shortness of breath, wheezing, and rib pain. (PageID.1068.) She was treated with an inhaler and oral medication, told to take her antibiotics for an additional day, and discharged with instructions to find a primary care physician. (PageID.1074–1075.) On January 20, 2014, Plaintiff went to urgent care complaining of bumps in her mouth, cough, nose bleed, and a yeast infection, which she thought was due to her prescribed antibiotics. (PageID.1034.) She had unlabored breathing. (PageID.1034.) It was noted that she had recently been on antibiotics for a sinus infection. (PageID.1052.) Plaintiff was not given any medications during this visit, was counseled on asthma, and discharged the same day. (PageID.1055.) Finally, on March 24, 2014, Plaintiff visited urgent care complaining of left shoulder pain, chest and nasal congestion, cough, sore throat, and asthma. (PageID.993.) Plaintiff was diagnosed with an acute exacerbation of her asthma and treated with a nebulizer. (PageID.999, 1001.) After treatment, she had greatly improved air movement, but still had wheezing. (PageID.1011.) Plaintiff was discharged the same day with nonlabored respiration. (PageID.997.)

At bottom, the above records do not appear to demonstrate that Plaintiff received the intensive treatment or prolonged therapy necessary to satisfy the severity requirement of the above listing. But even if they did, Plaintiff fails to satisfy another element of the listing. As the

11

introduction of the listing makes clear, Plaintiff must suffer from asthma attacks despite prescribed treatment.  20 C.F.R. Pt. 404, Subpt. P, App.1 § 3.03. Here, Plaintiff did not consistently follow prescribed care.  Indeed, the record demonstrates that Plaintiff's relationship with her primary care physician ended because she was not complying with his recommendations and care plan. (PageID.1084.)   On January 5, 2014, in the middle of the six records she depends upon, it was noted Plaintiff did not check her peak air flows, and did not take her medication routinely. (PageID.1084.)  Plaintiff accordingly has not demonstrated she meets all the requirements of Listing 3.03B.  This claim of error is rejected.

### 3. Plaintiff Has Waived Her Remaining Arguments.

Finally, it appears Plaintiff questions the ALJ's step five determination, contending that the RFC upon which the hypothetical question to the VE was based is unsupported by substantial evidence.  Plaintiff also argues the ALJ should have adopted the March 4, 2014, opinion of Dr. John Healey that imposed a five-pound lift restriction and also should have incorporated limitations due to the side effects of Plaintiff's medications.  (PageID.1203–1204.)  These claims are undeveloped and lack any coherent argument.  Accordingly, they have been waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

Even if Plaintiff had not waived these arguments, they would fail.  Regarding Dr. Healey's opinion, the ALJ emphasized the opinions did not seem to indicate Plaintiff would be permanently disabled.  (PageID.45.)  A review of the March 4, 2014, opinion indicates the ALJ was

correct.  In that note, Dr. Healey continued a five pound lifting limitation and indicated that there would be a follow up in six weeks.  (PageID.848.)  On March 27, however, Dr. Healey signed off on a physical therapist's opinion that Plaintiff's rehabilitation potential was "good."  (PageID.852–853.)  It does not appear Plaintiff treated with Dr. Healey again.  Plaintiff's attempt to transform this temporary restriction into a permanent restriction based upon the mere fact that the record is silent regarding further treatment with this physician is unavailing.  Consequently, these records do not satisfy Plaintiff's burden of demonstrating disability lasting at least twelve months.  *See Vaughn v. Comm'r of Soc. Sec.*, No. 14-CV-12496, 2015 WL 5216165, at *4 (E.D. Mich. Sept. 4, 2015) (collecting cases).  As for Plaintiff's testimony regarding the side effects of her medications, such allegations must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where claimant testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of Health & Human Servs*, No. 91–1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence").  Here, Plaintiff depends only on her testimony in support.  (PageID.1203.)  The ALJ considered Plaintiff's allegations, but found they were not credible.  (PageID.43–44.)  Plaintiff does not challenge the ALJ's credibility analysis.  Accordingly, Plaintiff has not demonstrated any error on this point.

       For all the above reasons, this claim of error fails.

## CONCLUSION

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**. The Court further determines that appeal of this matter would not be taken in good faith. *See Smith v. Comm'r of Soc. Sec.*, 1999 WL 1336109, at *2 (6th Cir. 1999); *Leal v. Comm'r of Soc. Sec.*, 2015 WL 731311, at *2. A separate judgment shall issue.


Dated:      January 13, 2017                /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE